UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTHONY LAROSA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11805** |
| **HARVEY OPERATIONS-T, LLC**<br>**A SUBSIDIARY OF GROUP 1**<br>**AUTOMOTIVE, INC.** | **SECTION D (3)** |

## ORDER

Before the Court is Defendant Harvey Operations-T, LLC's Motion for Summary Judgment.[1] The Motion is opposed,[2] and Defendant has filed a Reply.[3] Because Plaintiff fails to create an issue of material fact as to whether Defendant's proffered reasons for terminating LaRosa were pretextual, the Court GRANTS the Motion.

### I.   FACTUAL BACKGROUND

This is an age-discrimination case involving a car dealership. Harvey Operations-T is a subsidiary of Group 1 Automotive, Inc., "Group 1," which is a large automotive retailer that operates three dealerships in Louisiana, including Bohn Brothers Toyota.[4] In 2016, management in Group 1 began actively recruiting Anthony LaRosa to become the General Manager of Bohn Brothers Toyota. It is

---

[1] R. Doc. 19.
[2] R. Doc. 20.
[3] R. Doc. 31.
[4] R. Doc. 19-3 at 1 ¶¶ 1-2.

undisputed that LaRosa was most heavily recruited by Mike Springs, who was then Group 1's sixty-two-year-old Gulf South Market Director.[5] It is also undisputed that David Fesmire, the Vice President of Operations, approved of LaRosa's hiring.[6] LaRosa accepted the position and began as General Manager of Bohn Brothers Toyota on January 23, 2017.[7] LaRosa was sixty-two years old at the time he was hired.[8]

In the two years that followed, Bohn Brothers Toyota was not as successful as management had hoped. Specifically, Defendant cites that profitability, sales volume, and sales efficiency declined from early 2017 through early 2019.[9] Throughout this time, Group 1 management repeatedly spoke with LaRosa about what they viewed as poor performance. In August 2018, Fesmire sent LaRosa a breakdown of the month's budget and noted it was not "the month we were expecting."[10] LaRosa responded that it was "not the month I expected either" and stated "[t]rust me, I'm not happy either."[11] In 2019, Daryl Kenningham, Group 1's CEO, wrote to LaRosa when a report demonstrated that retail sales efficiency had decreased over the past year. He wrote on the report: "Tony, going the wrong way."[12] At his deposition, LaRosa acknowledged that the decrease in sales efficiency

---

[5] *See* R. Doc. 20-2 at 1-3; R. Doc. 19-3 at 1 ¶ 3.
[6] R. Doc. 19-3 at 1 ¶ 4; R. Doc. 20 at 2.
[7] *See* R. Doc. 20-2 at 3 ¶ 14.
[8] LaRosa testified at his deposition that he was sixty-one when he was hired. *See* R. Doc. 19-4 at 67. But other evidence in the record, including LaRosa's declaration, indicates that he was sixty-two when he was hired. *See* R. Doc. 20-2 at 1 ¶ 2; R. Doc. 19-3 at 1 ¶ 3. Because it is undisputed LaRosa was hired in January 2017 (R. Doc. 20-2 at 3 ¶ 14), that he was fired at the age of sixty-four in March 2019 (R. Doc. 20-2 at 3 ¶ 16), and that his birthday is in October (R. Doc. 19-4 at 67), the evidence indicates that LaRosa was sixty-two at the age he was hired. The Court notes that a one-year difference in LaRosa's age at the time he was hired would not impact this analysis.
[9] *See* R. Doc. 19-3 at 2 ¶ 9.
[10] R. Doc. 19-6 at 1.
[11] *Id.* at 1.
[12] R. Doc. 19-8 at 2.

"[a]bsolutely was a problem."[13] On top of these issues, Gulf States Toyota, which performs semi-annual General Manager Evaluations on Group 1 Toyota dealerships, found that LaRosa did not meet its expectations several times.[14]

LaRosa largely blames the performance issues on Dan Kilmer, who replaced Springs as Gulf Coast Market Director in June 2018.[15] Kilmer had previously run a successful dealership for Group 1 in South Carolina.[16] According to LaRosa, Kilmer instituted a new advertising and pricing strategy for the dealership that LaRosa disagreed with.[17] Indeed, at his deposition, LaRosa stated: "And I'm telling you, I took a lot of pride in my job. And I lost it from two idiots [Kilmer and Fesmire], two idiots that didn't know what they were doing."[18] LaRosa also contends that his performance was adequate, particularly when judged by different metrics than those relied on by Group 1.[19]

On March 14, 2019, Group 1 terminated LaRosa.[20] LaRosa was terminated by Kilmer, and the decision was approved by David Fesmire, the Vice President of Operations, and Daryl Kenningham, Group 1's CEO.[21] LaRosa was replaced by Billy Moore, a forty-nine year old former manager of Don Bohn Ford, whom LaRosa argues was a liability to Group 1 due to various sexual harassment allegations.[22] Moore did

---

[13] R. Doc. 19-4 at 48-49.
[14] R. Doc. 19-3 at 4 ¶ 19.
[15] R. Doc. 20 at 8; R. Doc. 20-2 at 4 ¶¶ 26-27.
[16] R. Doc. 19-3 at 2 ¶ 6.
[17] *See* R. Doc. 20 at 8-9.
[18] R. Doc. 19-4 at 50-51.
[19] R. Doc. 20 at 19-22.
[20] R. Doc. 19-3 at 4 ¶ 20; R. Doc. 20-2 at 3 ¶¶ 16-19.
[21] R. Doc. 19-3 at 4 ¶ 20.
[22] *Id.* at 4 ¶ 21; R. Doc. 20 at 7-8.

not last long at Bohn Brothers Toyota, and was terminated in October 2019.[23] Notably, 75% of the general managers who worked under Kilmer were over fifty, and 25% of the managers were over sixty.[24]

In July 2019, LaRosa sued Harvey Operations arguing that he had been terminated as a result of age discrimination.[25] Defendant thereafter filed the instant Motion for Summary Judgment.[26] Defendant does not dispute that LaRosa can establish a *prima facie* case of age discrimination, but contends that he cannot show that the legitimate reason Defendant proffers for LaRosa's termination, unsatisfactory performance, is pretextual. Rather, Defendant argues that LaRosa is asking this Court to act as a "super-personnel department." LaRosa has filed an Opposition,[27] in which he argues his performance was satisfactory based on various metrics, that the issues with his performance were largely caused by Kilmer's advertising strategy, and that Defendant's choice of Moore to replace him is further evidence of age discrimination. Defendant filed a Reply,[28] further explaining its management decisions, and defending its choice of Moore as a successor.

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[29] If the movant shows the absence of a disputed material fact, the non-movant "must go

---

[23] R. Doc. 19-3 at 5 ¶ 23.
[24] R. Doc. 19-3 at 5 ¶ 24.
[25] *See* R. Doc. 1.
[26] R. Doc. 19.
[27] R. Doc. 20.
[28] R. Doc. 31.
[29] FED. R. CIV. P. 56(a).

beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[30] The Court views facts and draws reasonable inferences in the non-movant's favor.[31] The Court neither assesses credibility nor weighs evidence at the summary judgment stage.[32]

### III. ANALYSIS

LaRosa brings a claim under the Louisiana Employment Discrimination Law, La. R.S. 23:301, *et seq.* As the parties recognize, with respect to claims of age discrimination, the LEDL is modeled after the federal Age Discrimination in Employment Act and should be construed in light of federal precedent.[33] In order to establish an LEDL claim, a plaintiff may reply upon direct or circumstantial evidence. Here, LaRosa provides no direct evidence of age discrimination. The Court therefore applies the burden-shifting framework that the U.S. Supreme Court laid out in *McDonnell Douglas Corp. v. Green*.[34]

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case.[35] Once the plaintiff has done so, the "burden shifts to the employer to produce a legitimate, nondiscriminatory reason for [her] termination."[36] Once the employer has done so, the burden then shifts back to the plaintiff, who must produce

---

[30] *McCarty v. Hillstone Restaurant Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).
[31] *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018).
[32] *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (internal citation omitted).
[33] *See, e.g., O'Boyle v. La Tech Uni.*, 741 So. 2d 1289, 1290 (La. App. 2 Cir. 1999) (holding that the LEDL "mirrors the federal ADEA and should be construed in light of federal precedent").
[34] 411 U.S. 791 (1973). Louisiana Courts also apply this framework. *See also Taylor v. Oakbourne Country Club*, 663 So. 2d 379, 283-84 (La. App. 4 Cir. 1995) (applying *McDonnell Douglas* to a LEDL claim).
[35] *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).
[36] *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

"substantial evidence that the proffered legitimate nondiscriminatory reason is a pretext for discrimination."[37] "A decision as to whether judgment as a matter of law is appropriate ultimately turns on 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."[38]

In order to establish a *prima facie* case of age discrimination, a plaintiff must show "(1) that he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."[39] Here, LaRosa establishes a *prima facie* case. Specifically, he has established that he was discharged, that he was qualified, that he was sixty-four at the time of discharge, and that he was replaced by Moore, who was fifteen years his junior. The parties do not dispute that Plaintiff has established each of these elements.

Because LaRosa has established a *prima facie* case of age discrimination, the burden shifts to Defendant to provide a legitimate, nondiscriminatory reason for Plaintiff's termination.[40] Notably, this is a burden of production, not persuasion.[41] Here, Defendant has proffered a legitimate, nondiscriminatory reason for LaRosa's

---

[37] *Id.*
[38] *Id.* at 579 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).
[39] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).
[40] *See Laxton*, 333 F.3d at 578.
[41] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

termination: unsatisfactory performance.[42] Once Defendant provides a legitimate, nondiscriminatory reason for termination, the burden thereafter shifts back to Plaintiff to produce "substantial evidence that the proffered legitimate nondiscriminatory reason is a pretext for discrimination."[43]

In support of his contention that Defendant's reason for termination was pretextual, LaRosa argues that his performance was, in fact, satisfactory. He also points to the new online advertising program that was put in place by Kilmer which purportedly put their dealership at a disadvantage to other dealerships. According to Defendant, it primarily evaluated LaRosa's performance on (1) sales volume, (2) sales efficiency, and (3) profitability as opposed to budget.[44] Defendant has put forth evidence that Bohn Toyota was not successful with respect to these factors during LaRosa's tenure.[45] LaRosa does not directly dispute this. Rather, in his Opposition, LaRosa specifically cites to twenty other examples of evidence of satisfactory performance, including net profit of over $1,000,000 in the relevant years and positive finance and insurance gross.[46] In these examples, LaRosa primarily emphasizes that during his employment, Bohn Brothers Toyota was successful relative to other dealerships owned by Group 1, which sold different products throughout the Gulf Coast region.[47] LaRosa argues that his performance was satisfactory based on his own chosen metrics; however, Defendant has provided evidence that management

---

[42] R. Doc. 19-2 at 14. *See also* R. Doc. 19-15.
[43] *Laxton*, 333 F.3d at 578.
[44] R. Doc. 19-3 at 2 ¶ 9.
[45] *Id. See also* R. Doc. 19-6; R. Doc. 19-7; R. Doc. 19-8; R. Doc. 19-10.
[46] *See* R. Doc. 20 at 19-21.
[47] *See id.* at 20.

judged him by different metrics.[48]  Indeed, in his Opposition LaRosa concedes that he was aware of Defendant's sales goals and did not meet his sale goals, although he insists he came close.[49]  During his deposition, LaRosa testified that none of his supervisors ever made any negative comments about his age, nor had he ever heard from others that any of his supervisors had made such comments.[50]  Instead, in response to the question regarding whether there existed anything that connects his age to his termination, LaRosa testified "I mean, listen, the way—it's all in a mannerism.  It's all in the way I felt I was treated by Dan Kilmer.  He wanted me out of there because of what I knew, because of what I had to say. He didn't give me an opportunity."[51]

By asking the Court to intervene and find that Defendant's stated reason of termination for unsatisfactory performance was pretextual based on measurements of his success by his own metrics, LaRosa asks the Court to act as a "super-personnel department reviewing the wisdom or fairness of the business judgments made by [his] employer."[52]  Federal courts are specifically not vested with such powers. As the Fifth Circuit has explained, "it is not our place to second-guess the business decisions of an employer, so long as those decisions are not the result of discrimination."[53]  And as

---

[48] R. Doc. 19-3 at 2 ¶ 9.
[49] *See id.* at 22.
[50] R. Doc. 19-4 at 73.
[51] *Id.*
[52] *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 215 (5th Cir. 2018) (citing *Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006)).
[53] *Id.* at 212 (quoting *Jackson v. Watkins*, 619 F.3d 463, 468 n.5 (5th Cir. 2010). *See also Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason.  We do not try in court the validity of good faith beliefs as to an employee's competence.  Motive is the issue.").

the Seventh Circuit has more pointedly stated: "An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age. He can set unrealistic standards and fire an employee for not being able to meet them . . . He can be as arbitrary as he wants—he just cannot treat an older employee more harshly than a younger one."[54] Here, Plaintiff did not meet the standards set out by management. To the extent he argues that those standards were unreasonable, or that his performance was otherwise satisfactory and he therefore should not have been terminated, these arguments fail to undermine Defendant's proffered explanation or show that it is pretextual. Whether or not Defendant's stated criteria are the most appropriate on which to evaluate a manager of a dealership is a business judgment within Defendant's discretion.

Plaintiff also argues that, to the extent his performance was unsatisfactory, it was because of advertising strategies imposed by Kilmer on LaRosa that were not imposed on managers of other dealerships within the same franchise. As an initial matter, this argument fails for the same reason as LaRosa's argument that his performance was satisfactory enough to avoid termination—it deals with a business judgment this Court may not reconsider, namely, the advertising methods suited for individual dealerships.[55] The Court also notes that LaRosa specifically testified at his deposition that he had no knowledge whatsoever about how advertising was done

---

[54] *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1571 (7th Cir. 1989).
[55] *See Eyob,* 745 F. App'x at 215; *Palucki,* 879 F.2d at 1571.

at other dealerships.⁵⁶ He now submits an affidavit directly contradicting his deposition testimony, in which he states that his dealership was the only one subjected to Kilmer's advertising methodology.⁵⁷ When a plaintiff's deposition testimony contradicts his sworn affidavit, it may be disregarded under the sham-affidavit rule. That rule states that "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."⁵⁸ Therefore, when an affidavit differs from deposition testimony, courts may disregard the affidavit at the summary judgment stage.⁵⁹ Here, the contradiction between LaRosa's deposition testimony and his affidavit merits application of the sham-affidavit rule. Therefore, even if LaRosa's affidavit did create an issue of fact as to this issue, it would be properly disregarded.

Finally, LaRosa attempts to undermine Defendant's explanation for his termination by taking aim at the qualifications of his successor, Moore. Plaintiff spends much of his Opposition discussing Moore's purported sexual misconduct, stating "[t]here can be no justification by management to move Moore to LaRosa's position due to Moore's ongoing, documented inappropriate and illegal behavior."⁶⁰

---

⁵⁶ *See* R. Doc. 19-4 at 55 ("Q. And, again, do you have any knowledge as to how Dan [Kilmer] handled advertising for any of the other dealerships under his— A. None whatsoever. Q. –market? A. None whatsoever. I was only concerned about mine, and he never shared that information.")
⁵⁷ *See* R. Doc. 20-2 at 4 ¶ 27 ("Kilmer did not place restrictions on other younger general managers' advertising on their websites that he placed on me at Bohn Toyota. I had spoken to several other GM's at the time along the gulf coast, and they confirmed that they did not have to price their cars the way that Kilmer priced ours.").
⁵⁸ *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).
⁵⁹ *See, e.g., Powell v. Dallas Morning News, L.P.*, 776 F. Supp.2d 240, 247 (N.D. Tex. 2011) ("Courts have consistently disregarded such sham affidavits as nothing more than an attempt to 'manufacture a disputed material fact where none exists.'").
⁶⁰ R. Doc. 20 at 8; *see also id.* at 4-7 (Opposition discussing Moore's behavior); R. Doc. 20-3 (Declaration of Pamela Taquino discussing Moore's behavior).

LaRosa's argument that Moore made a poor successor because of allegations of sexual impropriety does nothing to undermine Defendant's explanation that it fired LaRosa for poor performance. The Court also notes that Defendant demoted Moore, age forty-nine, after six months for failing to turn Bohn Brothers Toyota around.[61] Defendant's willingness to demote a younger general manager, who had approximately twenty years of experience at the dealership,[62] in short order for the same reason it fired LaRosa is further evidence that it's focus with LaRosa was performance, not age.

The Court is further guided by the fact that when LaRosa was hired, he was sixty-two, and he was fired less than two years later, at the age of sixty-four. The Fifth Circuit has held that when a Plaintiff is hired and fired by the same actor within a short time period, there exists an inference that age discrimination is not the motive behind termination.[63] This is because "[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job."[64] Here, LaRosa argues this inference does not apply because he was hired by Marketing Director Michael Springs and was fired by the then-current Marketing Director Dan Kilmer, so therefore he was not hired and fired by the "same actor." But although Springs was actively involved in LaRosa's recruitment and hiring and Kilmer involved in LaRosa's firing, Fesmire, Vice President of Operations, approved both decisions. While the "same

---

[61] *See* R. Doc. 19-3 at 5 ¶ 23.
[62] R. Doc. 19-3 at 4 ¶ 21.
[63] *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), *abrogated on other grounds, Reeves*, 530 U.S. at 134.
[64] *Id.* (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)).

actor" inference would be stronger had the Marketing Director of Group 1 remained the same during LaRosa's employment, Fesmire's involvement in both decisions lends additional support to the Court's conclusion that summary judgment is appropriate.

In summary, LaRosa contends that Defendant, which employees a majority of managers over fifty-years-old and hired him at the age of sixty-two, only two years before firing him, discriminated against him based on his age. In support of this argument, LaRosa offers no evidence whatsoever of an age-based animus. Rather, LaRosa's arguments amount to contesting business decisions of his employer, disparaging his successor, and arguing that his performance was satisfactory based on other metrics that he should not have been terminated. These arguments fail to demonstrate that Defendant's proffered legitimate reason, unsatisfactory performance, acted as a pretext for age discrimination. Summary judgment is therefore appropriate.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment[65] is **GRANTED**. **IT IS FURTHER ORDERED** that the parties' Motions *in Limine*[66] are **DENIED AS MOOT**.

New Orleans, Louisiana, October 14, 2020.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[65] R. Doc. 19.
[66] R. Doc. 37; R. Doc. 38.